AUG 21 2026 PM1:44
FILED - USDC - FLMD - TPA

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**JESSIKA M. MORGAN,**
Plaintiff,

v.

**CRISIS CENTER OF TAMPA BAY, INC.,**
Defendant.

Case No.: 8:26-cv-2452-MSS-NHA

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Title VII Religious Discrimination, Retaliatory Termination, and Post-Employment Retaliation

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jessika M. Morgan, proceeding pro se, sues Defendant Crisis Center of Tampa Bay, Inc. under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and alleges as follows:

## I. NATURE OF THE ACTION

1. This action arises from Defendant's alleged discrimination against Plaintiff because of her sincerely held Christian beliefs, retaliation after she sought religious accommodation and opposed perceived religious discrimination, termination, and alleged post-employment retaliation affecting a federal employment background investigation.

2. Plaintiff did not seek permission to proselytize, pressure a caller, disregard crisis-intervention protocols, compromise safety, or abandon an essential job duty. Her request concerned only a brief and appropriate response when a caller voluntarily and affirmatively requested prayer.

IFP

3. The written record reflects that Defendant ultimately told Plaintiff on December 19, 2025 that no existing policy prohibited prayer requested or initiated by a caller and that Plaintiff could participate within stated professional and safety boundaries. Plaintiff therefore does not plead a standalone claim that Defendant continued denying that accommodation after December 19, 2025.

4. Plaintiff alleges, however, that before that written clarification Human Resources had communicated a categorical prohibition and a threat of termination; that scrutiny, shift-related treatment, and subjective criticism followed her religion-related inquiry; that Defendant terminated her shortly after her written complaint; and that Defendant later made materially adverse statements during a federal background investigation.

5. Plaintiff seeks back pay, front pay in lieu of reinstatement, compensatory and punitive damages, equitable relief, and a jury trial. Plaintiff affirmatively does not seek reinstatement.

## II. JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law.

7. This Court also has jurisdiction under 42 U.S.C. § 2000e-5(f)(3).

8. Venue is proper in the Middle District of Florida under 42 U.S.C. § 2000e-5(f)(3) because the alleged unlawful employment practices occurred in

Hillsborough County, Florida; Defendant operates in this District; and relevant employment records are maintained in this District.

9. The Tampa Division is the appropriate division because the events at issue occurred principally in Hillsborough County and Defendant is headquartered in Tampa, Florida.

## III. PARTIES

10. Plaintiff Jessika M. Morgan is an adult resident of Pasco County, Florida.

11. Defendant Crisis Center of Tampa Bay, Inc. is a Florida nonprofit corporation headquartered in Tampa, Hillsborough County, Florida.

12. At all material times, Defendant employed at least fifteen employees for each working day in at least twenty calendar weeks in the relevant current or preceding calendar year and was an employer within the meaning of 42 U.S.C. § 2000e(b).

13. Defendant employed Plaintiff as an Intervention Specialist / CIS Specialist, Tier II, from approximately November 3, 2025 through January 8, 2026.

## IV. ADMINISTRATIVE EXHAUSTION AND CONDITIONS PRECEDENT

14. On December 11, 2025, while still employed, Plaintiff submitted an EEOC online inquiry alleging religious discrimination and unequal treatment.

15. On March 16, 2026, Plaintiff signed a Charge of Discrimination against Defendant. The Charge identified religion as the protected category, alleged

continuing action, and described shift-related treatment, termination, and post-employment background-investigation statements.

16. The EEOC assigned Charge No. 511-2026-00966.

17. On April 6, 2026, Plaintiff supplemented the administrative record with allegations concerning her January 8, 2026 termination and alleged post-employment retaliation involving the Department of Homeland Security and U.S. Customs and Border Protection employment process.

18. On May 21, 2026, the EEOC notified Plaintiff that Defendant had submitted a position statement and afforded Plaintiff an opportunity to respond.

19. The EEOC thereafter issued a Determination and Notice of Rights. Plaintiff received or first accessed that Notice on or about June 16, 2026. A copy is attached as Exhibit A.

20. The EEOC made no determination on the merits and notified Plaintiff that she could file suit within ninety days of receipt.

21. This action is filed within ninety days after Plaintiff's receipt of the Notice.

22. All conditions precedent to this action have occurred, have been performed, or have been excused.

# V. FACTUAL ALLEGATIONS

## A. Employment, Position, and Compensation

23. Defendant extended Plaintiff an offer for a regular, full-time Intervention Specialist, Tier II position at $18.00 per hour, with an anticipated start date of November 3, 2025.

24. The offer correspondence did not guarantee a particular shift. Plaintiff nevertheless accepted the position with the contemporaneous understanding and expectation that, after training, she would work an overnight or third-shift schedule.

25. The overnight schedule carried shift-differential compensation. The precise differential amount and the qualifying hours are matters reflected in Defendant's payroll, scheduling, and compensation records.

26. Plaintiff possessed prior experience in crisis intervention, trauma-informed services, victim advocacy, client communication, and related work.

27. Plaintiff completed Defendant's required onboarding and training, including WELL-E-related training.

28. Plaintiff's essential duties included crisis intervention, de-escalation, safety assessment, documentation, and support to callers under Defendant's protocols.

29. Plaintiff understood that she remained an at-will employee during an introductory period. Her at-will status did not authorize discrimination or retaliation prohibited by Title VII.

**B. Religion-Related Inquiry and Conflicting Guidance**

30. Plaintiff is a Christian and holds sincere religious beliefs concerning prayer.

31. During training in November 2025, Plaintiff learned that another employee reportedly had been disciplined after allowing a caller in crisis to pray.

32. Plaintiff asked Amanda Carson, Defendant's Director of Talent Management, for clarification concerning whether an employee could participate when a caller voluntarily requested prayer.

33. Plaintiff alleges that Carson responded, in substance, that the issue was none of Plaintiff's business.

34. Plaintiff then sought clarification from Human Resources employee Amanda 'Mandy' Gunter.

35. Plaintiff alleges that Gunter told her, in substance, that prayer with callers was categorically prohibited, that Plaintiff should not pursue the issue, and that Gunter previously had terminated another Intervention Specialist for praying with a caller.

36. Paragraphs 33 and 35 state Plaintiff's recollection of disputed oral communications. The actual words used, the identity and treatment of any

other employee, and Defendant's contemporaneous understanding are matters for testimony and discovery.

37. Plaintiff understood the alleged Human Resources statements as a warning that responding to a voluntary prayer request in accordance with her faith could result in discipline or termination.

38. Plaintiff made clear that she would not initiate prayer, impose her beliefs, pressure a caller, disregard professional boundaries, interfere with essential duties, or compromise crisis-response and safety requirements.

39. Plaintiff's request was limited to permission to respond briefly and appropriately when a caller voluntarily and affirmatively requested prayer.

40. Plaintiff alleges that this request placed Defendant on notice of a perceived conflict between her sincere religious practice and the categorical prohibition allegedly communicated by Human Resources.

**C. Shift Treatment, Monitoring, and Compensation**

41. After Plaintiff completed the principal training period, other trainees were released to their assigned or anticipated shifts.

42. Plaintiff alleges that she was the only trainee retained on day shift rather than moved to the overnight schedule she anticipated.

43. Plaintiff alleges that Carson told her management intended to keep her on day shift so it could 'watch' her.

44. Plaintiff further alleges that the monitoring statement and continued day-shift placement followed her religion-related inquiry.

45. Defendant later stated in writing that Plaintiff's shift placement was based on training engagement, call volume, support, documentation, and development, and that no particular shift had been guaranteed.

46. Plaintiff disputed Defendant's asserted lack of overnight leadership coverage because she observed an overnight supervisor and lead coverage.

47. From late November through December 2025, Plaintiff repeatedly requested transition to the overnight schedule.

48. Plaintiff explained that the schedule was material because of daytime medical appointments and family-care responsibilities.

49. Plaintiff proposed a temporary second-shift compromise while seeking transition to overnight work.

50. Plaintiff alleges that the continued day-shift placement delayed or denied differential compensation associated with overnight work.

**D. December Review, Written Complaint, and Prayer Clarification**

51. On December 10, 2025, Lee Gray and a trainer conducted Plaintiff's thirty-day review.

52. The review addressed upcoming time off for medical appointments, call staffing, documentation, follow-through, Plaintiff's concern about remaining

on day shift, and a plan to keep her on day shift temporarily through no later than December 19, 2025.

53. The review described development and support needs but did not identify misconduct, impose formal corrective action, issue a final warning, establish a performance-improvement plan, or state that Plaintiff's employment was in jeopardy.

54. A separate attendance entry reflected a one-half point associated with a brief clock-in delay. Plaintiff reported that she was present and ready to work and that the delay resulted from the clock-in system. Attendance was not identified to her as the reason for termination.

55. On December 18, 2025, Plaintiff sent Human Resources and senior leadership a written request for executive review addressing shift and tier alignment, compensation, inconsistent explanations, written communication, and religious accommodation.

56. Plaintiff expressly characterized the religion-related treatment as discrimination and retaliation and asked that material responses remain in writing.

57. Defendant acknowledged Plaintiff's written complaint and requested an in-person discussion.

58. On December 19, 2025, Plaintiff formally requested permission to participate briefly when a caller voluntarily requested prayer, subject to caller choice,

professional boundaries, safety requirements, and immediate redirection when clinically or operationally necessary.

59. Later on December 19, Defendant's representative wrote that no existing policy prohibited prayer with a caller who initiated or requested it and that Plaintiff was permitted to participate within defined parameters.

60. That written position materially differed from the categorical prohibition and termination warning Plaintiff alleges Human Resources communicated orally during training.

61. Because Defendant gave written permission on December 19, Plaintiff does not allege that Defendant continued to deny the requested prayer accommodation after that date.

62. Plaintiff alleges that the prior oral statements, later written clarification, shift treatment, and evolving explanations are relevant to Defendant's knowledge, motive, and credibility.

## E. Heightened Scrutiny and Termination

63. After Plaintiff's religion-related inquiry and written complaint, meetings increasingly included Human Resources and director-level leadership.

64. Plaintiff alleges that feedback increasingly shifted from objective coaching to subjective descriptions of her tone, demeanor, emotional presentation, and overall fit.

65. Plaintiff requested written communications because she believed explanations and expectations were changing.

66. On January 8, 2026, Plaintiff was directed to attend a meeting initially described in email correspondence as a sixty-day review involving corrective actions.

67. The meeting instead became a separation meeting.

68. Defendant terminated Plaintiff on January 8, 2026 during her introductory period.

69. Amanda Carson communicated the termination.

70. Defendant stated that the decision was based on performance and overall fit.

71. Defendant did not identify to Plaintiff a single terminating incident, misconduct offense, or policy violation.

72. Before termination, Plaintiff had not received a written warning, final warning, performance-improvement plan, or formal corrective action advising that discharge was imminent.

73. On January 9, 2026, Plaintiff submitted a written rebuttal disputing the basis for termination and alleging retaliation and discrimination.

74. Defendant responded that Plaintiff was an at-will introductory employee, that progressive discipline was not required, that the decision rested on objective

performance information, and that Defendant denied discrimination and retaliation.

75. The same Human Resources leadership was involved in the training dispute, prayer discussions, shift monitoring, written complaint, and termination process.

76. Plaintiff alleges that the close timing, common decision-makers, conflicting prayer guidance, shifting explanations, and reliance on subjective concepts such as tone and fit support an inference that religion and protected opposition affected the termination decision.

**F. Alleged Post-Employment Retaliation**

77. After termination, Plaintiff pursued employment with the Department of Homeland Security and U.S. Customs and Border Protection and advanced to a background investigation.

78. On March 18, 2026, Plaintiff participated in an interview with Coleman Cook, a contract investigator affiliated with CACI, Inc. - Federal.

79. Cook told Plaintiff that her former employer had provided negative feedback, did not recommend her, and communicated information raising concerns regarding her integrity and character.

80. Cook further told Plaintiff, in substance, that Defendant had described Plaintiff as 'too emotional' for government work and had stated that she did not need to work for the government.

81. Cook also told Plaintiff that Defendant had referenced her religious beliefs and had stated that Defendant was 'not a religious organization' in the context of discussing Plaintiff.

82. Paragraphs 79 through 81 plead what Cook reported to Plaintiff. Plaintiff was not present for the underlying communication between Defendant and the investigator.

83. The identity of each speaker, the precise words used, the date and medium of each communication, Defendant's customary reference practices, and the complete CACI, DHS, and CBP records are within third-party or Defendant control and must be established through testimony, subpoena, and discovery.

84. Plaintiff has not alleged that DHS or CBP made a final adverse hiring decision because of Defendant's communication. Causation and the amount of any lost-opportunity damages remain subject to admissible evidence.

85. Upon information and belief, Defendant or its agents supplied materially adverse, non-neutral information concerning Plaintiff's religion, emotional fitness, integrity, character, or suitability for government service during the background investigation.

86. If proved, those communications were capable of impairing Plaintiff's federal employment candidacy and of dissuading a reasonable employee from requesting religious accommodation or opposing discrimination.

87. On April 6, 2026, Plaintiff supplemented her EEOC matter with the alleged post-employment conduct.

88. On April 6, 2026, Plaintiff also sent Defendant written notice of her claims, requested neutral factual employment verification, demanded preservation of relevant communications, and asked Defendant to identify persons who had communicated about her.

89. The April 6 correspondence placed Defendant on notice of Plaintiff's post-employment allegations and preservation demands.

**G. Mitigation and Harm**

90. Following termination, Plaintiff applied for Florida reemployment assistance.

91. A May 18, 2026 monetary determination identified a potential weekly benefit amount of $275 and a maximum benefit amount of $3,300, while also reflecting a pending wage issue. The document does not establish that all benefits were actually paid.

92. Plaintiff alleges that she continued searching for work and accepted lower-paid work while seeking comparable employment. The precise mitigation amounts

will be established through pay records, applications, and other admissible evidence.

93. As a direct and proximate result of the conduct alleged, Plaintiff has suffered and continues to suffer lost wages, lost differential compensation, lost benefits, impairment of employment opportunities, job-search expenses, reputational injury, emotional pain, mental anguish, inconvenience, humiliation, and loss of enjoyment of life.

## COUNT I
## RELIGIOUS DISCRIMINATION AND DISCRIMINATORY TERMINATION
## (Title VII, 42 U.S.C. §§ 2000e-2(a)(1), 2000e-2(m))

94. Plaintiff realleges paragraphs 1 through 93 as if fully set forth herein.

95. Plaintiff's Christian religion is protected under Title VII.

96. Plaintiff was qualified for the Intervention Specialist / CIS Specialist position and performed, or was capable of performing, its essential functions.

97. Defendant subjected Plaintiff to adverse employment actions affecting compensation, terms, conditions, and privileges of employment, including alleged shift-related differential loss and termination.

98. Plaintiff alleges that her religion, the perceived need to accommodate her religious practice, or both were motivating factors in the challenged actions.

99. The alleged oral prohibition and termination warning, monitoring statement, differential treatment after Plaintiff's inquiry, conflicting written guidance,

common decision-makers, temporal proximity, and subjective reliance on tone and fit support a plausible inference of discriminatory motive.

100. Defendant thereby violated Title VII.

**COUNT II**
**RETALIATION AND RETALIATORY TERMINATION**
**(Title VII, 42 U.S.C. § 2000e-3(a))**

101. Plaintiff realleges paragraphs 1 through 100 as if fully set forth herein.

102. Plaintiff engaged in protected opposition by reporting what she reasonably believed to be religious discrimination and retaliation, requesting written review, and seeking a religious accommodation.

103. Defendant knew of Plaintiff's internal protected activity before terminating her.

104. Defendant subjected Plaintiff to materially adverse actions, including alleged heightened scrutiny and termination.

105. Plaintiff alleges that, but for her protected opposition, Defendant would not have subjected her to the same materially adverse treatment and would not have terminated her when it did.

106. The close temporal proximity, common decision-makers, evolving explanations, conflicting guidance, lack of prior formal corrective action, and reliance on subjective criticism support causation and pretext at the pleading stage.

107. Defendant thereby violated Title VII's anti-retaliation provision.

**COUNT III**
**POST-EMPLOYMENT RETALIATION**
**(Title VII, 42 U.S.C. § 2000e-3(a))**

108. Plaintiff realleges paragraphs 1 through 107 as if fully set forth herein.

109. Title VII protects former employees from retaliation arising from protected opposition and participation.

110. Plaintiff had engaged in protected internal opposition before her separation and later pursued the EEOC process.

111. Upon information and belief, Defendant or its agents made materially adverse statements about Plaintiff during a federal background investigation after her termination.

112. The alleged statements addressed the same religion-related dispute and subjective emotional and character assessments involved in the termination process.

113. Plaintiff alleges that her protected opposition to perceived religious discrimination was a but-for cause of the communication.

114. The communication was capable of impairing future employment and dissuading a reasonable worker from engaging in protected activity.

115. The actual speaker, content, timing, knowledge, motive, and effect of the communication are disputed matters to be established through discovery and admissible evidence.

116. Defendant thereby violated Title VII's anti-retaliation provision.

## VI. DAMAGES AND OTHER RELIEF

117. Plaintiff seeks back pay from January 8, 2026 through judgment, including regular wages, proven shift-differential compensation, benefits, and other compensation she would have received absent the unlawful conduct, less interim earnings only to the extent required by law.

118. Plaintiff has undertaken reasonable mitigation efforts, including applying for benefits, seeking work, and accepting lower-paid work.

119. Plaintiff does not seek reinstatement. Because the alleged discrimination, termination, loss of trust, and post-employment conduct have irreparably damaged the employment relationship, Plaintiff seeks front pay as equitable relief in lieu of reinstatement.

120. Plaintiff seeks compensatory damages for proven past and future pecuniary losses, emotional pain, suffering, mental anguish, humiliation, inconvenience, reputational injury, and loss of enjoyment of life.

121. Plaintiff seeks damages attributable to the loss, delay, or impairment of employment opportunities, including the DHS/CBP opportunity, only to the extent causation and amount are established through admissible evidence.

122. Plaintiff seeks punitive damages under 42 U.S.C. § 1981a(b)(1) because she alleges that Defendant acted with malice or reckless indifference to her federally protected rights, subject to proof and all applicable statutory limits.

123. Plaintiff seeks appropriate equitable relief designed to prevent further retaliation and correct proven adverse employment or reference records.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant and award:

a. A declaration that Defendant violated Title VII;

b. Back pay, including regular wages, proven shift differential, benefits, and other compensation, less interim earnings only as required by law;

c. Front pay in lieu of reinstatement; Plaintiff does not request reinstatement;

d. Compensatory damages for proven pecuniary and nonpecuniary losses;

e. Punitive damages to the extent authorized by 42 U.S.C. § 1981a and supported by the evidence;

f. Damages for any proven loss, delay, or impairment of the DHS/CBP or other employment opportunity caused by Defendant's unlawful conduct;

g. Equitable relief requiring correction or removal of proven unsupported adverse employment records and prohibiting further retaliatory or materially misleading employment communications;

h. Prejudgment and post-judgment interest;

i. Costs of suit and reasonable attorney's fees to the extent permitted by law;

j. A tax-component adjustment or comparable equitable relief if necessary to prevent an avoidable adverse tax consequence from a lump-sum award and if supported by competent evidence; and

k. All other legal and equitable relief the Court deems just and proper.

## VIII. JURY DEMAND

124. Plaintiff demands a trial by jury on all issues so triable under 42 U.S.C. § 1981a(c) and Federal Rule of Civil Procedure 38.

Respectfully submitted,

Jessika M. Morgan

**JESSIKA M. MORGAN, Plaintiff pro se**
5552 8th Street, Apt. A
Zephyrhills, Florida 33542
Telephone: 704-320-6056
Email: jessikamorgan315@gmail.com

Dated: 8-21-2026